# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICHARD MALONE, | ) |
| Petitioner, | ) |
| v. | ) No. 15 CV 02514 |
| JUSTIN HAMMERS, | ) Judge John J. Tharp, Jr. |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Before this Court is Petitioner Richard Malone's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Malone is currently serving a 21-year sentence at the Illinois River Correctional Center for a 2008 armed robbery of a Walgreens store in Chicago. This Court previously dismissed as procedurally defaulted four of the nine grounds for relief Malone asserted in his petition and ordered the Respondent to respond to the merits of Malone's five remaining claims. Each of the remaining claims is without merit, defaulted, non-cognizable, or suffers from some combination of those deficiencies and, accordingly, Malone's § 2254 petition is denied.

## BACKGROUND[1]

Petitioner Richard Malone was convicted of armed robbery with a firearm following a bench trial in Cook County Circuit Court and was sentenced to serve 21 years in prison. Malone's sentence included a 15-year sentencing enhancement that is mandatory under state law when the defendant committed the robbery while armed with a firearm. *See* 720 ILCS 5/18-2(b) (providing

---

[1] Factual determinations by state courts are presumed to be correct unless a petitioner offers clear and convincing evidence suggesting otherwise. *Miller v. Cockrell*, 537 U.S. 322, 340 (2003); *see also* 28 U.S.C. § 2254(e)(1). Here, Malone has offered no such evidence. Accordingly, the factual background is derived from the record established in the state court proceedings.

that where a person commits robbery while armed with a firearm, "15 years shall be added to the term of imprisonment imposed by the court"); *see also* Ex. A, *People v. Malone*, 978 N.E.2d 387, 393 ¶ 24 (Ill. App. Ct. 2012), ECF No. 9-1.

At trial, Walgreens cashier Betty Ross testified that she saw Malone in her store on March 6, 2008, "wearing a hat pulled down over his face" that covered "[m]ostly his eyes." Ex. A, *Malone*, 978 N.E.2d at 389 ¶ 2. Ross testified that when Malone approached her cash register, she was able to see his face from "the middle of his eyes all the way down." *Id.* at ¶ 3. Malone bought an inexpensive lighter, put it in his pocket, and then walked away before returning to buy a second lighter, which he also put in his pocket. When Ross opened the cash register drawer to complete the second sale, Malone reached his hand in the drawer. Ross pushed Malone's hand out of the drawer and closed it with her hip. Ross then began retreating away from the cash register, toward the manager's office, until she heard a noise "like something heavy hit the counter." *Id.* at 390 ¶ 4. She looked back over her shoulder and saw Malone holding in his right hand a gun that was either all black or silver and black, which he was resting on the counter. Malone then told her to open the cash register, which she did. Malone reached in and took approximately $110. Surveillance footage substantially corroborated Ross's account of the robbery. That footage included an image of the offender holding what appears to be a gun while reaching into the cash register.

Surveillance footage also showed that the offender was wearing a jean jacket with white sleeves and a wide-brimmed camouflage hat. Detectives viewed the surveillance footage and, the day after the robbery, canvassed the neighborhood surrounding the Walgreens. They looked inside a dumpster across the street from the Walgreens and found a jean jacket with white sleeves and a camouflage fishing hat that appeared to match those worn by the offender. An evidence technician retrieved the clothing from the dumpster and found gloves, a black "doo-rag," and three lighters

in the jacket pockets. The majority of the DNA found on the gloves, hat, doo-rag, and jacket matched Malone's DNA profile.

A few hours after the robbery, police officers showed Ross a group of photographs. Ross told the police officers that she did not recognize the offender in any of the photographs. The officers told her that the photographs were old and "the person could be changed." *Id.* at 390 ¶ 5. Ross said she was unable to identify the offender from the photographs and would need to actually "see the person." *Id.* The officers asked whether it was "possible" that one of the persons in the photographs could be the offender. *Id.* She said it "could be possible" and identified one of the persons in the photos as having a chin and lips that resembled the offender's. That photo did not depict Malone. *Id.*[2]

The day after the robbery, Ross was presented with another group of photographs and indicated that "it was possible" that one of the photos depicted the offender "if they were very old pictures." *Id.* at ¶ 6. The individual in the photo she selected was not Malone. Roughly 16 months after the robbery, police showed Ross a photo array that included a photograph of Malone. This time, Ross showed no hesitation in identifying Malone as the offender. A few days later, Ross went to the police station and picked Malone out of a lineup, again with no hesitation.

Now before this Court is Malone's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Malone initially asserted nine claims as to why he is being held unlawfully, but this Court held that four of those claims are procedurally defaulted because he did not exhaust available state court remedies, and that the entire petition is untimely unless Malone can establish that he is entitled to equitable tolling pursuant to 28 U.S.C. § 2244(d)(1)(B). Order dated Apr. 12,

---

[2] Although the point is nowhere made expressly in the record, it is clear that Malone was not included in this photo array or the next one that Ross was shown the following day.

2017, ECF No. 13; *see also* Pet. 7–12, ECF No. 5 (conceding that he had not exhausted available state court remedies for four of his claims). This Court then ordered the Respondent to respond substantively to Malone's five remaining claims so that the Court may determine whether any of those claims have merit, which could moot any need to hold an evidentiary hearing to determine whether to apply equitable tolling to allow Malone to proceed on his otherwise untimely petition. Order dated Apr. 12, 2017 at 6, ECF No. 13.

Malone's five remaining claims are that (1) the evidence was insufficient to prove Malone guilty of armed robbery beyond a reasonable doubt because Ross's identifications were unreliable and the trial judge relied on evidence outside the record, namely that the three lighters found in the pocket of the jacket had been obtained from the Walgreens where the robbery took place; (2) the evidence was insufficient to prove Malone's guilt of armed robbery beyond a reasonable doubt because the state failed to prove that the object in his hand was actually a firearm[3]; (3) the fifteen-

---

[3] Section 2-7.5 of the Illinois Criminal Code (720 ILCS 5/2-7.5) provides that the definition of "firearm" is that set forth in Section 1.1 of the Firearm Owners Identification Card Act, 430 ILCS 65/1.1, which states:

> "Firearm" means any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas; excluding, however:
>
> (1) any pneumatic gun, spring gun, paint ball gun, or B-B gun which expels a single globular projectile not exceeding .18 inch in diameter or which has a maximum muzzle velocity of less than 700 feet per second;
>
> (1.1) any pneumatic gun, spring gun, paint ball gun, or B-B gun which expels breakable paint balls containing washable marking colors;
>
> (2) any device used exclusively for signaling or safety and required or recommended by the United States Coast Guard or the Interstate Commerce Commission;

4

year sentencing enhancement for use of a firearm during the commission of a crime violated the Illinois Constitution; (4) trial counsel provided ineffective assistance by assuring Malone that he was ineligible for the fifteen-year enhancement; (5) the trial court did not warn Malone about the fifteen-year enhancement before his trial.

Malone argued issues (1) through (3) during his direct appeal, but the Illinois appellate court affirmed, holding that the evidence was sufficient to sustain Malone's conviction for armed robbery with a firearm and that the application of the 15-year sentencing enhancement did not violate the Illinois Constitution. Malone then filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court on issues (2) and (3), which the Illinois Supreme Court denied. Malone later filed a petition for post-conviction relief in state court asserting entitlement to relief based on claims (4) and (5) and other ineffective assistance grounds. The state postconviction trial court dismissed the petition without a hearing because Malone did not provide any affidavits or other evidence in support of his claims or explain the absence of such evidence. The court further held that Malone could not show prejudice because 21 years was the minimum sentence the court could have imposed under Illinois law, regardless of whether any advice or admonishment regarding the sentencing enhancement would have led to him pleading guilty instead of going to trial. Malone did not file a timely notice of appeal of the denial of his postconviction petition. He later filed a motion for leave to file a late notice of appeal, which was denied. Malone then filed a petition for

---

(3) any device used exclusively for the firing of stud cartridges, explosive rivets or similar industrial ammunition; and

(4) an antique firearm (other than a machine-gun) which, although designed as a weapon, the Department of State Police finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's items and is not likely to be used as a weapon.

leave to appeal the denial of his motion for leave to file a late notice of appeal, which was also denied.

## DISCUSSION

**I.     Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996, codified at 28 U.S.C. § 2254, allows this Court to grant a writ of habeas corpus "if a state court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by Supreme Court precedent; or (2) rested on an unreasonable factual determination." *Clark v. Lashbrook*, 906 F.3d 660, 663 (7th Cir. 2018) (citing 28 U.S.C. § 2254(d)(1)–(2)). The petitioner has the burden to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This standard is "difficult to meet," "highly deferential" to state-court rulings, and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted); *see also Makiel v. Butler*, 782 F.3d 882, 896 (7th Cir. 2015) ("Federal courts must avoid using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.") (internal quotation marks and citation omitted). "The operative decision under review is that of the last state court to address a given claim on the merits." *Makiel*, 782 F.3d at 896.

A petitioner seeking to challenge a state conviction under § 2254 must first exhaust his available state court remedies. *See* 28 U.S.C. § 2254(b)(1)(A); *see also Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009). If there is no longer any state corrective process available, procedural default will "bar a federal court from granting relief on a habeas claim unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or, alternatively, he

convinces the court that a miscarriage of justice would result if his claim were not entertained on the merits. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (emphasis and internal citations omitted). The first of those two equitable exceptions—cause and prejudice—requires a petitioner to show an external force that prevented him from bringing his federal claim in state court and that this force "worked to his ***actual*** and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). The second equitable exception—miscarriage of justice—requires the petitioner to show that "no reasonable juror would have found him guilty but for the error(s) allegedly committed by the state court." *Perruquet*, 390 F.3d at 514.

## II. Sufficiency of the Evidence

### A. Procedural Default of Claim (1)

Malone's sufficiency challenge based on Ross's identifications and the lack of evidence tying the lighters to the Walgreens store is procedurally defaulted because he did not raise those arguments in his petition for leave to appeal to the Illinois Supreme Court. A petitioner must raise his claim through a petition for discretionary review with the Illinois Supreme Court before he presents the claim to a federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Lewis v. Sternes*, 390 F.3d 1019, 1025–26 (7th Cir. 2004) (stating that exhaustion requires petitioner to raise claim "at each and every level in the state court system, including levels at which review is discretionary rather than mandatory"). The claim is thus procedurally defaulted unless Malone "demonstrates cause for the default and prejudice resulting therefrom, or, alternatively, he convinces the court that a miscarriage of justice would result if his claim were not entertained on the merits." *Perruquet*, 390 F.3d at 514 (internal citations omitted). Malone has not explained why he failed to include this claim in his PLA. Nor has he shown that the Illinois appellate court's

ruling was unreasonable, let alone that a miscarriage of justice would result if his claim were not entertained on the merits. Accordingly, Claim (1) is procedurally defaulted.

B.     **Merits of Claims (1) and (2)**

In any event, the Illinois appellate court was not unreasonable in concluding that the evidence was sufficient to prove Malone guilty of committing armed robbery while armed with a firearm. Sufficient evidence for conviction exists so long as "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Habeas reviews of claims regarding the sufficiency of the evidence, therefore, "are subject to two levels of judicial deference creating a high bar: first, the state appellate court determines whether any rational trier of fact could have found the evidence sufficient; second, a federal court may only overturn the appellate court's finding of sufficient evidence if it was objectively unreasonable." *Saxon v. Lashbrook*, 873 F.3d 982, 988 (7th Cir. 2017).

Malone fails to satisfy this high burden. The Illinois appellate court's conclusion that the evidence was sufficient for a rational factfinder to conclude that Malone was guilty beyond a reasonable doubt was not objectively unreasonable. The state court applied the appropriate precedent in assessing the reliability of Ross's identifications, invoking the five-factor test the Supreme Court set forth in *Neil v. Biggers*, 409 U.S. 188 (1972), and reasonably concluding that Ross had a good opportunity to observe the robber, her degree of attention was high, and her identification of Malone was unequivocal even after 16 months. Ex. A, *Malone*, 978 N.E.2d at 394–397, ¶¶ 27–37. Malone maintains that Ross could not have reliably identified the robber because she had only a partial view of his face because he was wearing a hat, but Ross was still able to view his face from "the middle of his eyes all the way down" when he approached her cash register. Ex. N, Trial Tr. N. 20:23–21:14, ECF No. 20-2. Ross initially declined to identify the robber as

8

any individual in the first two photo arrays she was shown. After the officers told her that the robber may have aged since the picture was taken, she identified individuals whose lips and jawline looked like the robber's, saying that it was "possible" one of them could have been the robber if the pictures were old. *Id.* at N. 41:5-18, 44:9-18. By contrast, when Ross was presented with a photo array that included Malone—some 16 months later—she identified him as the robber without hesitation. She did so again when she viewed a lineup several days later. Contrary to Malone's argument, the highly tentative and hesitant nature of Ross's acknowledgment that someone in the two original photo arrays might have been the robber enhances, rather than detracts, from the reliability of her subsequent identification of Malone. Despite the encouragement she received from the police, Ross would not make a firm identification of any of the individuals in the original photo arrays; it was reasonable for the trial court to conclude that when Ross did unequivocally identify Malone as the robber, she was confident in doing so and the identification was based on her perception of the robber rather than any suggestiveness on the part of the police.

Ross's identifications of Malone, moreover, hardly exhausted the evidence upon which a rational factfinder could have concluded that Malone was the robber. In a dumpster across the street from the Walgreens, detectives found a jacket and hat that matched the description of those worn by the robber, along with a doo-rag, gloves, and three lighters in the jacket pocket. The major DNA profile on each of the four items of clothing matched Malone's, and there could be little doubt that the clothing had been discarded by the robber. It matched the clothing Ross described and that could be seen on the video and found in the pockets were lighters—the very objects that the robber had used as a means of getting a look at the cash drawer before initiating the robbery. There was, in short, ample evidence upon which to find Malone guilty of robbing the Walgreens.

Malone argues that the trial judge erroneously found, without evidence, that the lighters came from the Walgreens that had been robbed, but the state appellate court considered that argument and reasonably concluded that the trial court could permissibly infer that the lighters in the jacket pocket included those that Ross testified the robber put into his jacket pocket. It was more than reasonable to reject the incredible hypothesis implicit in Malone's argument about the lighters: that someone other than the Walgreens robber just happened to have the same type of random objects in the pocket of a jacket that had previously been worn by Malone and matched the description of clothing worn by the robber and then discarded that jacket, the objects, along with other articles of clothing that had also been worn by Malone, in a dumpster in the neighborhood of the Walgreens that had been robbed. That there were three lighters found in the jacket rather than two, moreover, does nothing to diminish the strength of the inference connecting Malone to the clothing and the clothing to the robber; if anything, it suggests that the robber may have employed the ruse of purchasing a lighter to get a look at the till as a *modus operandi*.

The sufficiency of the evidence that Malone possessed a firearm (Claim (2)) presents a somewhat closer question. Whether the object that Malone placed on the counter was an actual firearm rests on Ross's testimony and the video evidence. Although Ross unequivocally identified the object as a gun, she also acknowledged that she had never seen an actual gun before, and Malone challenges the sufficiency of her lay testimony and the video evidence to prove that the object the robber brandished was an actual firearm.

The implication of Malone's argument is that the state was required to negate the possibility that the gun Ross observed was something other than a "real" gun, such as a toy or an antique replica. But the state's burden is not to disprove all speculative hypotheses that a defendant may advance; rather, it is to present evidence sufficient to sustain a verdict beyond a reasonable

doubt. *See United States v. Brown*, No. 18-434, 2019 WL 3857605, at *2 (2d Cir. Aug. 16, 2019) ("[T]he mere possibility that a firearm observed by a witness could be a sophisticated toy or other facsimile does not necessarily create a reasonable doubt, nor is the government required to disprove that theoretical possibility.") (citation and internal quotation marks omitted). Ross unequivocally identified what she saw in Malone's hand as a gun, and everything else we know about the object is consistent with that conclusion: the object was heavy—it clunked when Malone placed it on the counter—so it is unlikely that it was made of plastic or some material other than metal, as a toy likely would be; it was black and silver, rather than colorful as many toy guns are (to distinguish them from real guns); and perhaps most significantly, it was wielded in a manner consistent with a conclusion that it was a real gun. As the Illinois appellate court observed based on the video of the robbery, the robber, after putting a glove on his right hand, is seen "holding what appears to be an actual gun while robbing the Walgreens." Ex. A, *Malone*, 978 N.E.2d at 399 ¶ 52. More specifically, the video shows, according to the appellate court, that the robber "leaned over the counter and pointed the gun at Ms. Ross." *Id.* at 391 ¶ 9. Ross began to "run away" toward the office and had already separated herself from the robber's immediate vicinity before returning to the cash register to comply with the robber's demand to open it, Ex. N, Trial Tr. N. 16:8–18:15, giving rise to a reasonable inference that she returned to the cash register because she perceived the object in his hand to be a firearm capable of "expel[ling] a projectile," 430 ILCS 65/1.1 (defining "firearm"), that could seriously harm her from a distance—in other words, that the robber might shoot her.

Against this evidence that the object was both employed and regarded as an actual firearm, Malone has pointed to no evidence suggesting that the object was anything other than a firearm. As the Seventh Circuit has explained in the context of the federal "firearm" definition, which is

11

materially similar to Illinois' definition, "There is no requirement that the government produce the firearm or other corroborating evidence [beyond a single witness's testimony] to sustain a conviction" for an offense involving a firearm. *United States v. Lawson*, 810 F.3d 1032, 1039–40 (7th Cir. 2016). "Nor is there any requirement that the government produce an expert witness or more than one lay witness." *Id.* at 1040. Although the witness in *Lawson* had testified that he was familiar with guns, *see id.*, the Seventh Circuit has also held that surveillance video along with testimony "from witnesses with minimal familiarity with firearms" was sufficient to allow the factfinder to infer that the defendants carried firearms, *United States v. Moore*, 25 F.3d 563, 568 (7th Cir. 1994). Other courts have reached similar conclusions. *See, e.g.*, *United States v. Jones*, 16 F.3d 487, 490–91 (2d Cir. 1994) (sustaining firearm conviction where "eyewitnesses . . . were not familiar with weapons"); *United States v. Steele*, 390 F. App'x 6, 11 (2d Cir. 2010) (same); *United States v. Lankford*, 196 F.3d 563, 576 (5th Cir. 1999) ("The Government is not required to produce the actual weapon allegedly used, possessed, or carried and may rely on testimony, including the testimony of lay witnesses, in its attempt to prove that a defendant used, possessed or carried a 'firearm' as that term is defined for purposes of [the federal 'firearm' definition]."); *United States v. Beverly*, 99 F.3d 570, 572–73 (3d Cir. 1996) (upholding conviction where victim testified that defendant "threatened him with a gun during the course of the robbery, and that the gun . . . was a chrome-plated revolver"); *Whitis v. United States*, No. 94-6333, 1995 WL 462423, at *4, 62 F.3d 1418 (Table) (6th Cir. 1995) (testimony of single victim-witness sufficient to sustain firearm conviction); *United States v. Patino*, 962 F.2d 263, 265 (2d Cir. 1992) (testimony of kidnapping victim that he could see form of gun through kidnapper's shirt sufficient to sustain firearm conviction); *Parker v. United States*, 801 F.2d 1382, 1384–85 (D.C. Cir. 1986) (eyewitness testimony need not come from firearms expert to sustain federal firearm charge); *United States v.*

*Dorsey*, No. CR 14-328-CAS, 2015 WL 4232517, at *6 (C.D. Cal. July 6, 2015) (rejecting argument that "eyewitness testimony may only be used as proof that a gun used in a robbery was real if the witness has extensive experience with firearms or had an unusually close vantage point during the robbery"); *Evans v. McDonald*, No. EDCV 11–00072 DMG, 2011 WL 3737180, at **5–7 (C.D. Cal. May 13, 2011) (expressing approval of principle that "whether or not [an object] is a real weapon or a fake weapon [or a] replica weapon" is not "beyond the k[e]n of the ordinary citizen"); *People v. Clifton*, No. 1-15-1967, 2019 WL 1716102, at *5, --- N.E.3d ----, ¶ 33 (Ill. App. Ct. Apr. 16, 2019) ("Proof a brandished object constitutes a firearm can be established by the testimony of a single eyewitness."). The Illinois appellate court, therefore, did not act objectively unreasonably in concluding that a rational factfinder could have found, based on Ross's testimony and the video evidence, that Malone was, beyond reasonable doubt, armed with a firearm during the robbery.

### III. Questions of State Law Not Cognizable

Malone's claim that the imposition of a fifteen-year sentencing enhancement for possessing a firearm during an armed robbery violated the Illinois Constitution (Claim (3)) is not cognizable on § 2254 review. Malone presents this claim as a challenge to the state court's interpretation of state law. *See* Pet. 6, ECF No. 5 (arguing that the fifteen-year sentencing enhancement for possession of a firearm "was declared unconstitutional in [*People v. Hauschild*, 871 N.E.2d 1 (Ill. 2007), and that] Illinois['] 2007 amendment of the armed violence statute did not revive the armed robbery [enhancement]"). "The remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." *Perruquet*, 390 F.3d at 511; *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a

federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Malone's § 2254 petition does not allege that the firearm enhancement violates federal law or the United States Constitution. But even if he were advancing such an argument, he would have been required to first present his arguments to the state courts and alert them, at least in general terms, that there is a federal basis for the arguments. *Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If state courts are to be given the opportunity to correct alleged violations of a prisoners' federal rights, they must be surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."). Malone has not done so.

## IV. Advice and Admonishment Regarding Sentencing Enhancement

Malone's claims that his counsel inadequately advised him as to his eligibility for the 15-year firearm enhancement (Claim (4)) and that the trial court failed to admonish him as to the maximum penalties faced (Claim (5)) are procedurally defaulted. Malone raised these issues in his state postconviction petition, which was denied, and then Malone did not file a timely notice of appeal. His motion for leave to file a late notice of appeal and his petition for leave to appeal the denial of his motion for leave to file a late notice of appeal were both denied. If "a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules, the federal court . . . will not entertain the claim." *Oaks v. Pfister*, 863 F.3d 723, 726 (7th Cir. 2017) (citation and internal quotation marks omitted).

Malone has not shown cause for and prejudice arising from this procedural default, nor has he shown that a miscarriage of justice would result if the Court does not entertain these claims. The 15-year sentencing enhancement was mandatory under Illinois state law, and it likely would have applied even if Malone had pled guilty. As the postconviction trial court explained, "the record is replete with evidence a gun was used by [Malone]," making it unlikely that the court would have accepted a plea that did not include the 15-year firearm enhancement. Ex. H, Order

Denying Post-Conviction Pet. 12, ECF No. 9-8. If, as Malone contends, the state offered him a plea deal with a sentence of six years for armed robbery, his total sentence under the plea agreement would still have been 21 years after accounting for the sentencing enhancement regardless of whether he pled guilty or went to trial. Hence, even if the Court accepts the proposition that Malone's counsel's effective advice or the trial court's admonishment would have led to Malone accepting a plea offer instead of going to trial, Malone has not shown that he was prejudiced by being "misled" to trial by either his counsel or the trial court.

And even assuming procedural default were not a bar to Claims (4) and (5), they would still fail because they were decided on another independent and adequate state law ground: Malone failed to submit with his postconviction petition any affidavits or other evidence that he received a plea offer or what its terms were. Failing to submit affidavits or other evidence with a state-court postconviction petition as required by Illinois law, 725 ILCS 5/122–2, is an independent and adequate state procedural basis for the state court's denial of the claim, *Thompkins v. Pfister*, 698 F.3d 976, 986–87 (7th Cir. 2012). Malone has not provided any explanation for why he failed to include any affidavits or other evidence with his postconviction petition.

Finally, assuming Malone's ineffective assistance claim had not been both procedurally defaulted and decided on independent and adequate state law grounds, Malone nevertheless would not have shown the kind of prejudice that would be required to satisfy the "doubly deferential" review for claims of ineffective assistance of counsel on § 2254 petitions. To demonstrate ineffective assistance of counsel, a person challenging a conviction must meet the two-part standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) by showing that "(1) his counsel's performance was deficient, meaning it fell below an 'objective standard of reasonableness' informed by 'prevailing professional norms' and (2) his counsel's deficient

performance prejudiced him, meaning that there is a 'reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *McElvaney v. Pollard*, 735 F.3d 528, 532 (7th Cir. 2013) (quoting *Strickland*, 466 U.S. at 688). On § 2254 review "the question is not whether [Malone's] counsel's actions were reasonable. The question is whether there is any reasonable argument that [Malone's] counsel satisfied *Strickland*'s deferential standard." *Id.* (citation omitted). If there is such a reasonable argument, this Court must not disturb the state court's ruling. In circumstances where ineffective assistance allegedly led to a defendant rejecting a plea offer, that defendant when challenging his conviction "must show that but for the ineffective advice of counsel there is a reasonable possibility that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). Malone has made no such showings. [4]

## V. Certificate of Appealability

This is a final decision ending the proceedings in this Court. If Malone wishes to appeal this final order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Although the Court finds that Malone's argument as to the sufficiency of the evidence that an actual firearm was used during the robbery lacks merit, the claim presents a substantial constitutional question about which reasonable jurists might disagree;

---

[4] Malone's reply brief reasserts other ineffective assistance of counsel claims that this Court has already dismissed as procedurally defaulted but does not provide any basis to revisit that ruling. *See* Reply 5–8, ECF No. 25; *see also* Order dated Apr. 12, 2017 at 2, ECF No. 13.

accordingly, the Court grants a Certificate of Appealability limited to that issue. *See* 28 U.S.C. § 2253(c)(3).

* * *

For the reasons stated above, Malone's petition for a writ of habeas corpus, ECF No. 5, is denied.

Date: August 30, 2019

John J. Tharp, Jr.
United States District Judge